UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIEDRE GIANNINI,<br>    Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br>    Defendant. | CIVIL ACTION NO.<br>3:05cv244 (SRU) |

## RULING ON ADMISSIBILITY OF PLAINTIFF'S COMPARATIVE FAULT IN CAUSING THE ACCIDENT

This case arises out of a one-car motor vehicle accident in which the plaintiff, Diedre Giannini, sustained injuries when her vehicle crashed into a lamp post. Giannini brought several claims against the defendant, Ford Motor Company ("Ford"), alleging that defects in the manufacture of her vehicle caused her to sustain enhanced injuries. After partial summary judgment was granted to Ford, the case is now ready for trial. At the pretrial conference, the parties disputed the admissibility of evidence proving Giannini's comparative negligence in causing the collision. For reasons that follow, I hold that evidence of plaintiff's negligence in causing the accident is not admissible.

### I.    Background

On December 3, 2003 at approximately 9:30 p.m., Giannini drove to a restaurant to pick up some food. Upon exiting the restaurant and returning to her vehicle, Giannini started her engine to drive home. What happened next is disputed.

Giannini alleges that her vehicle accelerated uncontrollably, despite the fact that she had her foot slammed on the brake pedal. Giannini's vehicle careened across a parking lot and struck a concrete barrier, at which point the vehicle's air bag deployed. The vehicle then quickly dislodged from the barrier, again accelerated across the parking lot, and crashed into a lamp post.

Giannini alleges that she was wearing her seat belt, and that the seat belt failed to restrain her, causing her to sustain enhanced injuries.

By contrast, Ford asserts that Giannini did not slam her foot on the break pedal, and that the collision was caused by Giannini's negligent actions. Ford alleges further that Giannini's alcohol consumption on the night of the accident contributed to her negligent operation of her vehicle, and diminished her ability to remember the details of the accident. Finally, Ford alleges that Giannini was not wearing her seat belt, and even if she was wearing her seat belt, Giannini would still have sustained her injuries.

On January 13, 2005 Giannini filed a complaint against Ford, sounding in products liability, in Connecticut Superior Court.[1] Giannini alleged that her vehicle was not crashworthy in two principal respects: (1) the vehicle's braking system failed to function properly; and (2) the primary and supplemental restraint systems failed to protect Giannini from her injuries.

Ford subsequently moved for summary judgment on both claims. In an oral ruling on December 7, 2006, I denied Ford's motion with respect to Giannini's primary and supplemental restraint system claims, and granted Ford's motion with respect to Giannini's braking system claims.[2] At a subsequent hearing on Ford's motion in limine to preclude certain expert testimony, I further narrowed Giannini's primary and supplemental restraint system claims to her

---

[1] The case was later removed to federal court based upon diversity jurisdiction.

[2] I did not issue a written decision on the summary judgment motion, but the transcript of the December 7, 2006 hearing set forth my reasoning. Briefly, I granted summary judgment on the claims related to the braking system because, even assuming a defect in the brakes or engine existed (or caused the accident), Giannini presented no evidence to indicate that any alleged defect existed at the time the vehicle was first manufactured and sold.

claim that the seat belt malfunctioned.[3]

At the pretrial conference, Ford indicated that it intended to produce evidence to establish that Giannini's own negligence caused the collision, including the fact that, at the time of the accident, Giannini was intoxicated. Giannini indicated that she intended to present evidence, in response, that the alleged malfunction in the braking and acceleration systems caused the collision. I hold that the proposed evidence is inadmissible for the purpose of establishing that Giannini's alleged comparative negligence either did, or did not, cause the accident.

## II.     Discussion

The remaining seat-belt claim is a product liability action brought pursuant to Conn. Gen. Stat. § 52-572m, and more specifically, brought under an enhanced injury theory or "second collision" theory. In the seminal case on the second collision doctrine, the Eighth Circuit Court of Appeals held:

> Where the manufacturer's negligence in design causes an unreasonable risk to be imposed upon the user of its products, the manufacturer should be liable for the injury caused by its failure to exercise reasonable care in the design. These injuries are readily foreseeable as an incident to the normal and expected use of an automobile. While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. No rational basis exists for limiting recovery to situations where the defect in design or manufacture was the causative factor of the accident, as the accident and the resulting injury, usually caused by the so-called "second collision" of the passenger with the interior part of the automobile, all are foreseeable.

---

[3] I also did not issue a written decision on the motion in limine, but the transcript of the March 27, 2007 hearing set forth my reasoning. Briefly, I excluded the claim related to the air bag because Giannini alleges, and the expert testified, that the air bag deployed at the concrete barrier, but the collision that caused Giannini's injuries occurred at the lamp post. So by her own allegations and by her expert's opinion, any air bag malfunction could not have caused any of her injuries.

*Larsen v. General Motors Corp.*, 391 F.2d 495, 502 (8th Cir. 1968). The Second Circuit Court of Appeals expounded that "[s]ince manufacturers are already under a duty to construct vehicles that are free of latent defects, it follows that the manufacturer's liability for injuries proximately caused by these defects should not be limited to collisions in which the defect causes the accident, but should extend to situations in which the defect caused injuries over and above that which would have occurred from the accident, but for the defective design." *Caiazzo v. Volkswagenwerk A.G.*, 647 F.2d 241, 245 (2d Cir. 1981) (citing *Larsen*, 391 F.2d 495). In short, the second collision doctrine presupposes that collisions will occur. *Id*. ("since collisions are a foreseeable, though unintended, result of the normal operation of automobiles, a manufacturer is under a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision").

The doctrine contemplates two sets of injuries in the event of a collision involving a vehicle in a defective condition: injuries caused, in whole or in part, by the defect itself ("enhanced injuries"), and injuries not caused by the defect, such as the injuries an individual would inevitably sustain in the absence of any defect.

The issue here, however, is not whether Ford can introduce evidence of Giannini's comparative negligence to apportion liability for non-enhanced injuries. Indeed, they need not introduce evidence for that purpose – the jury will be instructed in substance that "[t]he manufacturer is liable only for enhanced injuries, that is, injuries over and above the injuries that would have resulted from the accident, absent the alleged design defect. Enhanced injury refers to the degree by which a defect aggravates collision injuries beyond those which would have been sustained as a result of the impact or collision absent the defect." *Borsack v. Ford Motor*

*Co.*, 2007 U.S. Dist. LEXIS 54201, *6 (S.D.N.Y. July 26, 2007). The parties will be required to present evidence at trial to prove, or disprove, that any given injury was specifically caused by the alleged defect.

Instead, the issue here is whether Giannini's comparative negligence in causing the collision is relevant to apportioning liability for Giannini's alleged enhanced injuries. Comment f to Section 16 of the Restatement (Third) of Torts, Products Liability[4] squarely addressed the issue:

> The more difficult issue is whether the plaintiff's negligent conduct leading to the underlying accident should be a subject of comparative fault in determining liability for increased harm. The courts are sharply split on this issue. . . . In enhanced injury cases, unlike ordinary products liability cases, a claimant's fault in causing the accident is not a basis for reducing his recovery. Undoubtedly, many accidents are the result of the injured party's negligence. Nevertheless, a manufacturer's duty is that of minimizing the injurious effects of contact however caused. The inevitability of both operator negligence and injury-producing contact was a primary reason for the judicial recognition of the duty to protect against enhanced injuries. The cause of the contact has no bearing on the issue of whether an object's

---

[4] Section 16 provides that:
(a) When a product is defective at the time of commercial sale or other distribution and the defect is a substantial factor in increasing the plaintiff's harm beyond that which would have resulted from other causes, the product seller is subject to liability for the increased harm.

(b) If proof supports a determination of the harm that would have resulted from other causes in the absence of the product defect, the product seller's liability is limited to the increased harm attributable solely to the product defect.

(c) If proof does not support a determination under Subsection (b) of the harm that would have resulted in the absence of the product defect, the product seller is liable for all of the plaintiff's harm attributable to the defect and other causes.

. . .

> response to the contact was a reasonable one. The trier of fact's analysis must
> be limited to the nature and severity of the contact and the object's response.
> A negligent operator is entitled to the same protection against unnecessary
> injury as the careful user of the same product is entitled.

*Id*. Thus, the Restatement expressly provides that a plaintiff's comparative negligence in causing a given collision "is not a basis for reducing his recovery" in enhanced injury cases, "unlike ordinary products liability cases." *Id*. The Restatement continues to note, however, that the majority of courts have not followed the stated reasoning.[5] *See id*.

Although the Connecticut Supreme Court has not addressed the issue, at least a few Connecticut Superior Court judges have considered whether evidence of a plaintiff's comparative negligence in causing an accident should be admissible in an enhanced injury claim. In *Foster v. American Honda Motor Co.*, 1996 Conn. Super. LEXIS 1678 (Conn. Super. Ct. July 2, 1996), the Court considered an enhanced injury claim related to an automobile accident. In that case, Foster alleged that the subject vehicle was not crashworthy because it contained a protruding, unpadded seat belt anchor bolt in the interior of the vehicle that caused her to sustain an enhanced injury in a collision. Defendants had raised the special defense that Foster was barred from recovery for the enhanced injuries because she negligently caused the collision. The court noted that some cases held that comparative negligence is admissible "if it relates to the cause of the enhanced injuries," and other cases had held that comparative negligence is not admissible if it is "offered to show the cause of the collision rather than the cause of the enhanced injuries."

---

[5] The split among courts addressing the issue reflects conflicting guidance in the Restatement itself, which also provides that: "the contributory fault of the plaintiff in causing an accident that results in defect-related increased harm is relevant in apportioning responsibility between or among the parties." Restatement (Third) of Torts, Products Liability § 16, Comment a, section f.

*Id*. at \*6.  The two lines of cases, when read together, "establish that in a crashworthiness case, evidence of the plaintiffs' negligence will be admitted if it relates to the cause of the enhanced injuries, but excluded if it relates to the cause of the collision." *Id*.; *Strohecker v. Trailmobile Group of Companies Ltd.*, 1998 Conn. Super. LEXIS 1484 (Conn. Super. Ct. May 22, 1998)

The Court in *Bravo v. Ford Motor Company*, 2001 Conn. Super. LEXIS 1116 (Conn. Super. Ct. April 16, 2001), came to a different conclusion.  The *Bravo* Court considered an enhanced injury claim related to the malfunction of an air bag.  In that case, the administrators of Olga Bravo's estate had alleged that when Olga Bravo crashed her vehicle into a tree and fence, the air bag deployed causing Bravo to sustain a fatal injury.  Ford had asserted a special defense, alleging that Bravo was comparatively negligent in causing the initial collision.  The *Bravo* Court denied the plaintiff's motion to strike the special defense.  It reasoned that although the comparative fault of a plaintiff in causing a collision is not relevant to determining whether a manufacturer has a *duty* to design a crashworthy vehicle, comparative fault is relevant to determining whether a given enhanced injury is *caused* by a given accident.  The *Bravo* Court reasoned further that minority and Restatement positions rely on a faulty assumption that "in every crashworthiness case involving enhanced injuries, the alleged defect is the sole proximate cause of the enhanced injuries." *Id*. at \*16.

I need not attempt to predict what bright-line rule, if any, the Connecticut Supreme Court would adopt to govern enhanced injury cases generally.  The inadmissibility of comparative fault evidence in this case follows from the nature of the alleged product defect and the nature of the alleged comparative negligence.  The only product defect claim that will be tried to the jury involves a claimed defect in the operation of the car's seat belt.  The claimed comparative

negligence involves Giannini's intoxication and consequent reckless operation of the vehicle.[6] The claimed comparative negligence, by definition, could not have affected the operation of the seat belt nor have caused any enhanced injuries, which are the only injuries at issue in this case. *See* Restatement (Third) of Torts, Products Liability § 17(a) ("A plaintiff's recovery of damages for harm caused by a product defect may be reduced *if the conduct of the plaintiff combines with the product defect to cause the harm . . . .*) (emphasis supplied). For comparative negligence to be admissible in a case such as this one, the negligence would have to affect the operation of the seat belt, e.g., product misuse, alteration or modification. *See* Restatement (Third) of Torts, Products Liability § 17(a) ("when plaintiff misuses, alters, or modifies the product, such conduct may constitute contributory fault and reduce the plaintiff's recovery under the rules of comparative responsibility"). Because the only claimed basis of comparative negligence in this case cannot have produced any of the claimed damages in this case, such evidence is irrelevant. In the case's current posture, the cause of the accident is irrelevant to determining whether the seat belt was defective, or whether the seat belt defect caused Giannini's enhanced injuries. So, to the extent that Ford seeks to introduce evidence for the purpose of establishing Giannini's fault in causing the accident, that evidence is inadmissible.

Ford also intends to introduce evidence that Giannini negligently failed to wear her seat belt. That evidence is admissible and highly relevant to the narrow issue in this case. Indeed, if Ford prevails on that issue, Giannini can recover no damages from Ford.

---

[6] Giannini's alleged failure to wear her seat belt is not a basis for comparative negligence but instead is a complete defense to liability. If she was not wearing her seat belt, then Ford cannot be liable for any defect in its operation because the seat belt could not have caused Giannini's injuries.

-8-

Ford also seeks to introduce evidence to prove Giannini was intoxicated on the night of the accident. Ford seeks to introduce that evidence for two purposes: (1) to prove Giannini negligently caused the accident; and (2) to impeach Giannini. For reasons set forth in this ruling, evidence of Giannini's intoxication is not admissible to prove the cause of the accident. Evidence of intoxication, however, is a permissible ground for impeachment of the plaintiff's ability to observe and recall critical events.

## III. Conclusion

For the foregoing reasons, and for reasons set forth in the Restatement and in *Foster v. American Honda Motor Co.*, I hold that, under the circumstances of this case, evidence related to the cause of Giannini's accident is not admissible to apportion liability for her enhanced injuries. Ford may not introduce any evidence for the purpose of proving Giannini caused the subject accident, and Giannini may not introduce evidence to prove a defect in the vehicle caused the accident.

It is so ordered.

Dated at Bridgeport, Connecticut, this 2nd November 2007.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge